SAMUEL, Judge.
Plaintiff instituted this suit in workmen’s compensation for total and permanent disability benefits, penalties and attorney’s fees allegedly resulting from a knee injury which occurred in the course and scope of his employment as a butcher. The defendants, his employer and its compensation insurer, have appealed from a judgment which denies penalties and attorney’s fees but awards plaintiff total disability benefits, subject to a credit of $2,-150, the amount of compensation previously paid. Plaintiff has not appealed nor has he answered the appeal taken by the defendants.
Plaintiff testified that while stacking 50 pound boxes of meat in a freezer on May 4, 1967 he hit his left knee on the edge of a pallet holding the boxes. He reported the accident to his foreman and spent the rest of the afternoon resting in the lounge. The following day he worked during the morning and then, because of pain and swelling in the injured knee, he went to defendants’ doctor, Morris Fisher. Thereafter, with the exception of several days during which he could not work because of the condition of his leg and a two-week vacation period, plaintiff continued to work until surgery was performed on August 15,1967.
Defendants attempted to relate plaintiff’s injuries to an accident which occurred two months after May 4, 1967, but the record is devoid of any acceptable proof of such a later accident. We are satisfied, as was the trial judge, that plaintiff did suffer the accident as he testified. The trial court also concluded plaintiff was no longer capable of working as a butcher and that his injury, which was superimposed on a degenerative knee, caused or contributed to the disability. There is little or no doubt that, as is shown by all of the medical evidence., in the record, plaintiff is presently permanently disabled within the meaning of the compensation act. The question for our determination is whether or not his disability resulted from the accident of May 4, 1967.
Five medical experts testified at the trial. Drs. Morris Fisher, a general surgeon, and Rufus H. Alldredge and Gordon B. McFarland, Jr., orthopedic surgeons, were called by plaintiff; Drs. George R. Cary, also an orthopedic surgeon, and Coleman S. Schneider, a roentgenologist, were called by the defendants.
Dr. Fisher testified plaintiff was seen at the request of his employer on May 5, 1967. At that time he gave a history of an accident at work the preceding day and did not tell the doctor of any previous accident. Initial examination revealed swelling, pain and tenderness of the left knee. Physiotherapy, pain medication, a knee brace and an elastic brace were prescribed. Following eight treatments he was referred to Dr. Cary, who sent plaintiff back to the clinic for weight exercises and further physiotherapy. He was last seen by Dr. Fisher on March 28,1968.
Dr. Cary testified: He first saw plaintiff on May 17, 1967. Plaintiff gave a history indicating he had sustained an injury to the left knee in 1962 when he was pushing a vat of meat up an incline and fell, striking his knees. Examination revealed swelling of the left knee with slight atrophy of the left quadriceps muscle, moderate knee joint effusion, moderate arthritic ridging (osteophytes) of long duration and marked crepitation on palpation of the pa *351 tella, more on the left than the right. A large osteophyte was noted over the inner aspect of the kneecap in x-rays taken at that time. In Dr. Cary’s opinion plaintiff suffered a possible traumatic arthritis related to the left patella which occurred in 1962 as a result of a fall. The May 17, 1967 examination also revealed plaintiff suffered from a medial patella, femoral arthritis and a possible chondromalacia of the left patella (softening of the cartilage under the kneecap). Chondromalacia can he part of a degenerative process of aging, or it can be due to trauma.
A surgical exploration of the left patella was recommended to decide whether plaintiff would be able to function normally following the removal of medial arthritic spurs or whether the patella itself should be shaved or removed. During surgery, which was performed on August 15, 1967, it was found that plaintiff had grossly severe chondromalacia of the patella, an advanced condition of years duration, and a condition of cruciate ligament, i.e., a ligament inside the knee was torn in length and stretched thin, indicating an old injury. Instability of the knee was noted post op-eratively in the hospital.
After his release from the hospital plaintiff was treated by Dr. Cary as an outpatient. Recovery was slow due to obesity and the fact that he was unable to stay on a reducing diet because of an ulcer. On October 17, 1968 the doctor was of the opinion that, although plaintiff had a 30% permanent partial disability of the lower left extremity with medial instability on the left side, he had reached maximum benefits from medical treatment. He was advised to return to work.
Plaintiff did not return to work; he felt incapable of performing his duties because of pain and instability in the knee. He returned to Dr. Cary on November 7, 1968. Following examination on that date the doctor remained of the opinion no further treatment would be beneficial. On November 20, 1968 he again returned but the results of the physical examination were unchanged. He returned on March 7 and April 2, 1969, at which times his quadriceps muscles were atrophying due to failure to exercise the muscles.
Dr. Cary felt plaintiff’s problems were due in part to his refusal to at least try to return to work to see if he could perform. Until three days before the trial of this case he did not know of any injury to plaintiff’s knee other than the one which occurred in 1962. He was certain that the removal of the patella resulted from an old injury and that the accident of May 4, 1967 could not have contributed to that removal. He felt that all of the changes in plaintiff’s knee were due to an old injury compatible with the 1962 date and he found no evidence of a more recent injury. However, he also felt the effusion noted could have been caused by a more recent injury which might have made the earlier injury more painful on the knee cap. He was unable to say chondromalacia was precipitated or made more intense by a more recent injury or if such an injury was “the straw that broke the camel’s back”.
Dr. Schneider, the roentgenologist, identified and described x-rays of the left knee, taken on May 17, 1967, which indicated moderate sized osteophytes (attributed to degenerative disease) and calcification and ossification of the lower end of the patella tendon (probably due to old trauma). From the standpoint of radiology the pathology as shown by the x-rays was due to degenerative disease of the joint of long-standing duration. Additional x-rays were taken on October 3, 1968, after removal of the patella, and in April, 1969. These x-rays reveal situations which are usual after a patellectomy. They revealed no evidence of any recent trauma other than the surgical removal.
Dr. McFarland testified: He examined plaintiff on one occasion on January 27, 1969. At that time he found the anterior cruciate ligament unstable, and a mild laxity at the medial collateral ligament. X-rays at that time showed degenerative arthri *352 tis on both sides, particularly the left knee. The left patella was removed and there was some soft tissue ossification where the patella had once been. There were significant intraarticular problems resulting in disability, worse in the left knee than in the right. The extreme laxity almost certainly was due to trauma. Plaintiff had degenerative arthritis, worse on the left. The ligament laxity could be from the collapse of the joint line, or from strain and stretching of the ligaments. There was no way for him to tell how long ago the injury might have occurred.
Dr. Alldredge examined plaintiff on one occasion, April 12, 1969. At that time he walked with a limp using a brace on the left knee. He could walk without the brace but favored the left knee when doing so. The anterior cruciates were unstable in the anteroposterior plane, and the internal lateral ligament was quite unstable on the medial side. There was some atrophy of the muscles due to incomplete use of the part. Motion of the left knee was normal but plaintiff lacked 2 ° or 3 ° of full extension. He had full flexion. X-rays indicated the left patella had been removed and showed long-standing chronic osteoar-thritic changes in the joint with slight lateral displacement of the tibia on the femur.
Based on the examination and x-rays Dr. Alldredge was of the opinion plaintiff could not return to work as a butcher because it involved walking and standing for long periods, which plaintiff would be unable to do because of the pain and instability of the knee. He was of the opinion that the arthritic condition was partly to blame for plaintiff’s disability and that the pain in the knee was due to instability of the ligaments superimposed on osteoarthritic changes of at least several years duration. He could not say what had brought about the instability of the ligaments and he agreed that the instability could have related back to an injury of 1962.
Thus the medical evidence as a whole establishes that plaintiff’s disability is due to the pam and instability of the left knee and that, absent the instability and the added pain, plaintiff would not be disabled by the old osteoarthritic changes and the removal of the patella. While it is clear that the removal of the patella resulted from an old injury predating the accident of May 4, 1967, which later accident did not contribute to that removal, we are impressed by the fact that following the May 4, 1967 accident plaintiff was able to, and did, continue working until the patellectomy of August IS, 1967, a period of a little less than two months. As the surgery did not contribute to the instability of the ligaments, and as the instability, as found by Dr. McFarland, almost certainly was due to trauma, we cannot say that the trial court was in error in concluding the trauma involved in the accident of May 4, 1967, superimposed on the degenerative knee following surgery, materially contributed to plaintiff’s subsequent disability.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.